IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD LEE WHITE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br>　　　　Defendants. | Case No. 1:11-cv-00307 JLT (PC)<br><br>ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE<br><br>(Doc. 1) |

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. On March 17, 2011, Plaintiff consented to Magistrate Judge jurisdiction for all purposes. (Doc. 6) Pending before the Court is Plaintiff's complaint filed on February 22, 2011.

**I.      Plaintiff has failed to exhaust his administrative remedies under the PLRA**

Plaintiff alleges that he failed to receive the medical care that was necessary after he suffered a broken nose in a prison altercation on December 29, 2009.[1] (Doc. 1 at 2, 3) Plaintiff alleges that he filed a grievance that was partially granted at the First and Second Levels but was denied at the Third Level because he failed to present it in a timely fashion. Id.

From the documents attached to the complaint, it appears that on January 21, 2010, the CDCR notified Plaintiff that his grievance was being referred to the Health Care Appeals Office to prepare the

---

[1] Apparently, Plaintiff believes that the medical care was insufficient because he goes "to bed every night with the right side of my nose stuffed up." (Doc. 1 at 22)

1

First Level Response. (Doc. 1 at 7) As a result of this referral, Plaintiff was interviewed and examined by Dr. C. Nareedy who determined that Plaintiff had received medically appropriate care. Id. Therefore, on March 1, 2010, the CDCR notified Plaintiff that his appeal was "Partially Granted" at the First Level–because it was determined to be worthy of the interview and a medical examination by Dr. Nareedy–but was denied as to the merits. (Doc. 1 at 6) In short, Dr. Nareedy determined that Plaintiff's condition did not warrant him being seen by an Ear, Nose and Throat specialist as Plaintiff sought. Id.

On April 19, 2010, the CDCR responded to Plaintiff's Second Level Appeal. (Doc. 1 at 9) To prepare for this response, the CDCR referred the matter to Nurse Practitioner, I. Mathos, to examine Plaintiff to determine whether a change in medical care to an Ear, Nose and Throat specialist was warranted. Id. Mathos determined that Plaintiff's nose was "doing well" and that he had received appropriate medical care. Id. Thus, Mathos determined that Plaintiff's condition did not require consultation with an Ear, Nose and Throat specialist. Id. Just as in the First Level Appeal Response, therefore, the Second Level Appeal was determined to be partially granted. Id. The CDCR notified Plaintiff, "You are advised that you may submit this issue for a higher level of review by completing section 'H' of the CDCR 602HC and mailing the appeal directly to the address listed on the CDCT 602 HC." Id. at 13.

On May 2, 2010, Plaintiff filed an "Inmate Request for Interview" and complained that he expected to receive the CDCR's response by April 27, 2010, but did not. Id. at 21. In fact, on the first page of the Second Level Appeal response, Plaintiff has written a note indicating, "I did not receive this till May 19 2010." (Doc. 1 at 9) The CDCR responded to the May 2, 2010 complaint and verified that, in fact, the response had been returned to Plaintiff by April 27, 2010. Id. at 22. In keeping with this, Plaintiff's "Inmate/Parolee Health Care Appeal Form" indicates that the Second Level Appeal was completed by CDCR on April 19, 2010 and was returned to Plaintiff on April 23, 2010. Id. Moreover, contrary to his other handwritten note that he had received the Second Level Appeal on May 19, 2010, on this form Plaintiff has written, "Received back on 5/17/2010" next to the area relating to the Second Level Appeal. (Doc. 1 at 22)

On May 29, 2010, Plaintiff filed his Third Level Appeal. (Doc. 1 at 22)  On June 17, 2010, the CDCR "screened out" Plaintiff's Third Level Appeal as untimely. Id. at 12.

## II. Discussion

The Prison Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a prerequisite to the inmate filing a lawsuit. See Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth v. Churner, 532 U.S. 731, 739 (2001). The PLRA requires the inmate to exhaust every level in the administrative process. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). If the Court concludes that the prisoner has failed to exhaust his administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).

The goals of the PLRA's exhaustion requirement are to: (1) "eliminate unwarranted federal court interference with the administration of prisons;" (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and, (3) "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 548 U.S. 81, 84-85 (2006). Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Id. at 92-94.

The grievance and appeal procedure for inmates in the custody of the California Department of Corrections and Rehabilitation, is a four-step process. Vaden v. Summerhill, 449 F.3d 1047, 1048-1049 (9th Cir. 2006); Cal. Code Regs. tit. 15, §§ 3084.1-3084.6. Generally, the inmate is required to file an informal inmate appeal within 15 days of the incident. Brown v. Valoff, 422 F.3d 926, 929-930 (9th Cir. Cal. 2005). If denied at this First Level, the inmate can appeal to the Second Level which, generally, is to the warden or the warden's designee. Id. The Third Level Appeal is conducted by the CDCR's Director or designee. Id.

Importantly, "[t]he requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion" (Jones v. Bock, 549 U.S. 199, 218 (2007)), and it is only a final decision on the merits from the Third Level Appeal which satisfies the exhaustion requirement under the PLRA. Cal. Code Regs., tit 15, § 3084.7(d)(3) (2011); Brodheim v. Cry, 584 F.3d 1262, 1265 (9th Cir. 2009). An appeal can be "cancelled" in several circumstances, including when it is not timely presented. Cal. Code Regs., tit 15, § 3084.6(c)(4) (2011). When this occurs, the regulations set forth the

1  procedure for challenging this cancellation decision. Cal. Code Regs., tit 15, § 3084.7(c)(1) (2011).

2  Here, Plaintiff admits his Third Level Appeal was cancelled for failure to submit it in a timely
fashion.[2] (Doc. 1 at 2) Notably, at the bottom of the rejection letter for the Third Level Appeal, the
CDCR informed Plaintiff,

> Once an appeal has been cancelled that appeal may not be resubmitted. However, **a separate appeal can be filed on the cancellation decision**. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

Id. at 12, emphasis added. However, there is no indication that Plaintiff took any further action after receiving the notification that his appeal had been canceled. Given that Plaintiff was fully aware that the CDCR contended that it *had* responded to him by April 27, 2010, it is inexplicable that he did not outline his contention that he did not receive the response timely in his May 29, 2010 Third Level Appeal and, when it was canceled, that he did not appeal the cancellation decision on this basis. Cal. Code Regs., tit 15, § 3084.6(a)(3) (2011). As noted above, Plaintiff failed to take this action despite the clear mandate that he do so. Id.

Based upon the information alleged, the Court does not find that the CDCR has "created draconian procedural requirements that would 'trip[ ] up all but the most skillful prisoners'" and render administrative remedies effectively unavailable, so as to excuse a failure to exhaust. See Sapp v. Kimbrell, 623 F.3d 813, 827, citing Woodford v. Ngo, 548 U.S. 81, 102 (2006). Instead, the CDCR determined that Plaintiff's Third Level Appeal was not timely and provided Plaintiff an avenue for challenging this decision. (Doc. 1 at 22) His failure to do so ensured that he did not receive a decision on the merits to his Third Level Appeal. This is insufficient to satisfy the PLRA. Woodford, 548 U.S. at 83-84 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.")

In light of his admission his Third Level appeal was determined to be untimely, coupled with his failure to seek a determination that cancellation of his appeal was in error, the Court must find that

---

[2]Notably, "if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review" the cancellation decision may be reversed. Cal. Code Regs., tit 15, § 3084.6(a)(3) (2011). However, as noted above, it does not appear that Plaintiff sought to reverse the cancellation decision.

1  Plaintiff failed to exhaust his administrative remedies as required by the PLRA.  Given this, the Court
2  finds that Plaintiff has not exhausted his administrative remedies and under the PLRA, the matter must
3  be dismissed.   Therefore, the complaint will be **DISMISSED WITHOUT PREJUDICE**.

5  IT IS SO ORDERED.

6  Dated:   **April 11, 2011**                                                                       **/s/ Jennifer L. Thurston**
                                                                                           UNITED STATES MAGISTRATE JUDGE